DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, which terminated parental rights and awarded permanent custody of Kristiana B., the child of appellants, Melony B. and Paul B., to appellee Lucas County Children Services Board ("LCCS"). For the reasons stated herein, this court affirms the judgment of the trial court.
 {¶ 2} Appellants set forth the following assignment of error:
 {¶ 3} "The trial court erred in granting the Lucas County Childrens Services Board's motion for permanent custody as the decision was against the manifest weight of the evidence."
 {¶ 4} The following facts are relevant to this appeal. Kristiana was born on April 24, 2002. On that day, LCCS filed a complaint in dependency, as well as a complaint for original permanent custody, reasonable efforts bypass and a motion for a shelter care hearing. In the complaint, LCCS stated that the trial court had terminated the parental rights and awarded permanent custody of Melony's five other children to LCCS. The complaint also identified Paul as the father of the youngest of Melony's children. The complaint cited Melony and Paul's history of not providing adequate care. The complaint stated that permanent custody of Paul's two children with another woman was awarded to LCCS. The complaint cited domestic violence between Paul and the other woman witnessed by their two children as well as threats against the children in the parents' battles with each other.
 {¶ 5} A shelter care hearing was held on April 25, 2002, following which the magistrate granted temporary custody of Kristiana to LCCS. A guardian ad litem ("GAL") was appointed for the child and separate counsel was appointed for Melony and Paul.
 {¶ 6} The GAL submitted her report and recommendation on June 24, 2002, and recommended that permanent custody of Kristiana be awarded to LCCS. The adjudication was held on June 26, 2002; a judgment entry was filed on July 31, 2002. The judgment entry states that the parties stipulated to the allegations in the amended complaint and to a finding of dependency. The parties further stipulated that LCCS made reasonable efforts to avoid the continued removal of the child from the home. The parties stipulated that the disposition hearing would be continued beyond the 90 day statutory time period and would be held on September 18, 2002. Shelter care of Kristiana was continued with LCCS.
 {¶ 7} On September 18, 2002, the disposition was continued until January 29, 2003, as the parents were engaged in counseling and family services and LCCS wanted to permit the parents time to continue these services. On January 29, 2003, the disposition hearing was held.
 {¶ 8} At the disposition hearing, Holly Mangus, who had been the LCCS caseworker for approximately a year and a half, testified. Mangus testified that she had been involved with the family since Melony came to the attention of LCCS. The conditions which brought the family to the attention of LCCS included that the home was unfit for Kyle; that there was no food in the house; and Kyle had injuries, linear marks on his back, for which Paul was identified as the perpetrator.
 {¶ 9} Mangus testified that eight year old Angel, who Melony had left with her grandmother, was removed from the grandmother's house due to unsanitary conditions. Mangus also testified that Melony had left seven year old Cody with a relative of his father. Both children had been living in these situations for several years without any custody arrangements or care or support from Melony. Mangus also testified that Melony had left another child, Desirae, with her father's ex-girlfriend for a couple of years. Mangus testified that Nazieha, Paul and Melony's child, was removed because the parents were still working on their case plan services with regard to Kyle.
 {¶ 10} Mangus described Melony and Paul's relationship as very unstable. Mangus also stated that Melony was not always honest with her about Melony's relationship with Paul and whether or not Melony was living with him. Melony and Paul also lacked stable housing during the time Mangus worked with them. Although Melony was stable with her employment, Paul was not able to maintain employment.
 {¶ 11} In regard to Paul, Mangus testified that his two other children are in the permanent custody of LCCS. Mangus testified that although she explained to Melony the possible negative impact on her children being returned to her if Paul lost custody of his two children, Melony stayed with Paul and subsequently married him.
 {¶ 12} In regard to case plan services, Melony's included domestic violence classes, individual mental health counseling, securing appropriate housing, parenting classes, a psychological evaluation, anger management classes and interactive parenting classes. Paul's case plan services included parenting classes, mental health treatment, domestic violence treatment, a psychological evaluation and anger management classes. Mangus testified that concerns regarding attachment and bonding resulted from the psychological evaluations. Mangus described the interaction between the parents and the baby Nazieha as "minimal." Mangus testified that some of the case plan services were completed and others were not. Mediated agreements for the surrender to LCCS were signed for Melony's five children, including her child with Paul. Mangus also testified that she concluded her involvement in this case in June 2002, shortly after Kristiana was born. Mangus testified that when the present case was filed, the goal of the case plan was permanent custody due to lack of completion of individual counseling and lack of stable housing.
 {¶ 13} A second caseworker, Waynard Jones, testified that he received the case in June 2002. Jones testified that the disposition hearing was continued from September 18, 2002, because the parents were engaged in counseling and he thought it best to allow the parents to continue with the counseling. He testified that subsequent to this continuance, Paul's counseling was terminated by his therapist as the therapist felt there was no prospect for any future progress. Jones testified that he made some recommendations to Paul about other counseling agencies but that Paul did not follow through with these referrals. In regard to Melony, subsequent to the continuance, Jones learned that she did not attend counseling after September 26, 2002. Jones also recommended other counseling agencies to Melony but she told him she could not get an appointment. Jones testified that the parents' housing and relationship were both unstable. Jones also testified that he did not observe very much interaction between the parents and Kristiana, that they did not engage with the baby. He testified that the baby might have developmental delays although she is well adjusted to the foster home were she is with two of the other children. Jones recommended that permanent custody be awarded to LCCS because there was no progress on the same issues which continued from the past cases. In response to a question from the court, Jones testified that although case plan services were not required because both parents had permanently lost custody of other children, LCCS chose to offer services.
 {¶ 14} After LCCS rested, the parents moved for denial of the motion for permanent custody, arguing that LCCS had not met its burden for permanent custody. The trial court denied the motion.
 {¶ 15} On direct examination, Melony testified that LCCS took Kristiana from the hospital; that she did not have an open case plan with LCCS at the time Kristiana was born; that she had signed over permanent custody of her five children to LCCS in February 2002; and that she had completed the parenting and domestic violence classes and had started the counseling in her case plan for Kyle. In regard to anger management classes, Melony testified that she had completed these classes and that her completion enabled her to have a domestic violence charge, in which she was the perpetrator and Paul the victim, expunged from her record. In regard Desirae and Cody, Melony testified that although there was no support order, she bought clothing and other things if she was asked. Melony testified that she had not completed the case plan services required for Kyle when Nazieha was born, so he was taken from her. Melony also testified that although she called other counseling services on the recommendation of her caseworker, she could not afford to pay for the counseling. She admitted that she had lived in four different places since Kyle's shelter care hearing but offered reasons for each move. She testified that she lied to her caseworker about her marriage to Paul because Melony did not believe it was "any of her business." Melony testified that she did not see any reason Kristiana should not be with her, that she did not understand any of her case plan and she thought it was in Kristiana's best interest to be reunited with her.
 {¶ 16} On cross-examination, Melony admitted that she elected to stop her counseling on her own; that she did not make any other counseling appointments; and that she missed parenting classes for several weeks but stated the absences were due to illness.
 {¶ 17} The GAL testified that the parents' relationship was very volatile and their housing unstable; that the parents avoided contact with her; that Melony told the GAL during the case that she was not living with Paul but that Melony's testimony at the adjudication hearing was contrary to this. The GAL also testified that she was told by Melony's counselor that Melony had a personality disorder and attachment issues and counseling would be long-term. The GAL testified that Melony told her that she did not believe the counseling was "helping" and that she did not see any need to go to counseling. The GAL also testified that she was told by Paul's counselor that Paul had an antisocial personality disorder and attachment issues and that counseling would be long-term. She further testified that Paul told her he elected to stop counseling and that he and the counselor had nothing else to talk about. The GAL testified that she had continuing concerns about the attachment and bonding issues based upon the circumstances of the case and that she believed continued counseling would be beneficial to the parents. The GAL recommended that an award of permanent custody to LCCS was in Kristiana's best interest.
 {¶ 18} On cross-examination by Melony's attorney, the GAL testified that if Kristiana was placed with Melony, the risk would be that Kristiana would be neglected or abused. The GAL also testified that Melony did not complete counseling services.
 {¶ 19} At the conclusion of the disposition hearing, the trial court granted permanent custody of Kristiana to LCCS. Appellants each filed a timely notice of appeal. Appellate counsel was appointed.
 {¶ 20} In their assignment of error, appellants contend that the trial court's findings in support of the permanent custody award was against the manifest weight of the evidence. This court finds no merit in this assignment of error.
 {¶ 21} The disposition of a child determined to be dependent, abused or neglected is controlled by R.C. 2151.353. The trial court may enter any order of disposition provided for in R.C. 2151.353(A). However, before the court can grant permanent custody of a child to an agency, the court must determine: 1) pursuant to R.C. 2151.414(E) that the child cannot or should not be placed with one of his parents within a reasonable time; and 2) pursuant to R.C. 2151.414(D), that the permanent commitment is in the best interest of the child. R.C. 2151.353(A)(4). R.C. 2151.414(E) provides that, in determining whether or not a child can or should be placed with a parent within a reasonable time, the court shall consider all relevant evidence. If the court determines by clear and convincing evidence that any one of factors listed in R.C. 2151.414(E) exist, the court must find that the child cannot be placed with the parent within a reasonable time. The factors include:
 {¶ 22} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 23} "***
 {¶ 24} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 {¶ 25} "***
 {¶ 26} "(11) The parent has had parental rights involuntarily terminated pursuant to section 2151.353, 2151.414, or 2151.415 of the Revised Code with respect to a sibling of the child.
 {¶ 27} "***
 {¶ 28} "(16) Any other factor the court considers relevant." R.C. 2151.414(E)
 {¶ 29} Clear and convincing evidence is that proof which establishes in the mind of the trier of fact a firm conviction as to the allegations sought to be proved. Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. In determining the best interest of the child, R.C. 2151.414(D) directs that the court shall consider all relevant factors, including but not limited to:
 {¶ 30} "***
 {¶ 31} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 32} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 33} Upon a thorough review of the record in this case, this court concludes that the trial court's finding that granting permanent custody to LCCS was in Kristiana's best interest was supported by clear and convincing evidence.
 {¶ 34} In the case sub judice, Melony's parental rights to five other children, including one whom Paul fathered, and Paul's parental rights to two other children had been terminated. This finding alone was enough to support the court's decision. Additionally, although not required to do so[1], LCCS offered case plan services to appellants; however, appellants did not complete these services.
 {¶ 35} Accordingly, appellants' assignment of error is found not well-taken.
 {¶ 36} On consideration whereof, the court finds that substantial justice has been done the parties complaining and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Court costs of this appeal are assessed to appellants.
 JUDGMENT AFFIRMED.
[1] Pursuant to R.C. 2151.353(A)(4), a children services agency is not required to establish a case plan when the agency seeks original permanent custody of a child. See In the Matter of: Misty B. (Sept. 17, 1999), 6th Dist. No. L-98-1431; In the Matter of: Stephanie H. (Sept. 17, 1999), 6th Dist. No. H-99-009.